## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

APC TOWERS III, LLC,                        )
    Plaintiff,                         )
v.                                          )      Civil Action No.:
THE CITY OF ORLANDO, FLORIDA,               )
THE CITY COUNCIL OF THE CITY                )
OF ORLANDO, FLORIDA, and                    )
JOHN HUGH "BUDDY" DYER,                      )
JAMES GRAY, ANTONIO "TONY"                   )
ORTIZ, ROBERT F. STUART,                     )
PATTY SHEEHAN, REGINA I.                     )
HILL, and BAKARI F. BURNS,                   )
 in their official capacity as City          )
Commissioners,                              )
    Defendants.                       )
_____/

## COMPLAINT SEEKING DECLARATORY RELIEF
## AND REQUESTING EXPEDITED PROCEEDINGS

Plaintiff, APC TOWERS III, LLC ("APC" and "Plaintiff"), sues Defendants

THE CITY OF ORLANDO, FLORIDA (the "City"), THE CITY COUNCIL OF

THE CITY OF ORLANDO, FLORIDA, and JOHN HUGH "BUDDY" DYER,

JIM GRAY, ANTONIO "TONY" ORTIZ, ROBERT F. STUART, PATTY

SHEEHAN, REGINA I. HILL, and BAKARI F. BURNS, in their official capacity

as members of The City Council of The City of Orlando, Florida, (collectively the

"City Commissioners" or "Commissioners")(collectively the "Defendants") and

alleges:

## The Parties

1.    Plaintiff, APC Towers III, LLC is a Delaware limited liability company, that is a party adversely affected by Defendants' Denial of Plaintiff's application.

2.    Defendant, City of Orlando, Florida, is a duly authorized Municipal Corporation constituted and existing under the laws of the State of Florida.  The City possesses the authority to regulate the zoning and use of land located within its corporate limits.

3.    Defendant, The City Council of The City of Orlando, Florida (the "City Council"), is a duly authorized unit that has been delegated the authority, among other things, to grant conditional use permits under Orlando's Land Development Code (the "Code").  The conditional use permit process is contained in the Code as Sections 65.280 to 65.288.

4.    Defendants, John Hugh "Buddy" Dyer, Jim Gray, Antonio "Tony" Ortiz, Robert F. Stuart, Patty Sheehan, Regina I. Hill, And Bakari F. Burns, are each residents of the City and together serve as the City Council. Each is named in his or her capacity as a member of the City Council and not individually. John Hugh "Buddy" Dyer serves as the Mayor-Commissioner of the City Council. The remaining members serve as Commissioners of the City Council.

**Jurisdiction & Venue**

5.      This Court has federal question jurisdiction over this action under 28 U.S.C. § 1331, because it arises under the Federal Communications Act of 1934, as amended by the Telecommunications Act of 1996 ("TCA"), in particular 47 U.S.C. § 332(c)(7)(B). This Court also has jurisdiction over this action under 28 U.S.C. § 1337(a), because the Federal Communications Act and TCA are acts of Congress regulating commerce.

6.      This Court has jurisdiction to order declaratory and injunctive relief under 28 U.S.C. § 2201 and 2202 because there is an actual controversy between the parties.

7.      Venue is proper in this district under 28 U.S.C. § 1391(b), because Defendants are located in this district, "a substantial part of the events giving rise to the claim occurred" in this district, and "a substantial part of the property that is the subject of the action is situated" in this district.

**Expedited Proceeding**

8.      Pursuant to 47 U.S.C. § 332(c)(7)(B)(v) of the TCA, Plaintiff respectfully requests expedited treatment of this Complaint.

## Standard of Review

9.    There are three primary claims[1] that can be brought under Section 332 of the Telecom Act, they are 1) Failure to provide a written decision supported by substantial evidence ("Substantial Evidence"), 2) Failure to provide a decision within a 150 day time period from the date of a new communication tower application ("Shot Clock"), and 3) Rendering a decision on a communication tower application that prohibits or has the effect of prohibiting wireless service to a geographic area ("Effective Prohibition").  This action seeks relief under a Substantial Evidence claim and an Effective Prohibition claim.

10.    Failure to provide a written decision supported by substantial evidence could best be described as Federal Certiorari review of a communication tower application.  A federal court under a Substantial Evidence claim performs its review in a manner that is deferential to the local jurisdiction.

_____

[1] A communication tower applicant can also bring two additional claims 1) that a local jurisdiction unreasonably discriminated between wireless service providers and 2) that a local jurisdiction based its denial on the environmental effects of RF emissions.  MetroPCS Inc. v. City & County of San Francisco, C02-3442 PJH, 2005 WL 1692631, at *2 (N.D. Cal. July 15, 2005); T-Mobile W. Corp. v. City of Agoura Hills, CV 09-9077 DSF PJWX, 2010 WL 5313398, at *4 (C.D. Cal. Dec. 20, 2010).

11.     Extrinsic evidence may not be introduced.  The adjudicator is not allowed to re-weigh the evidence that was before the local jurisdiction but, rather, examines whether the decision of a local jurisdiction was supported by Substantial Evidence.  Substantial Evidence is considered to be between a mere scintilla and a preponderance of the evidence.

12.     Rendering a decision that prohibits or has the effect of prohibiting wireless service to a geographic area (Effective Prohibition) is a *de novo* review, giving no deference to local jurisdiction.

13.     A local jurisdiction can engage in effective prohibition even if its decision is supported by substantial evidence.  Extrinsic Evidence is allowable under effective prohibition review.

**General Allegations**

14.     T-Mobile South, LLC ("T-Mobile"), is licensed by the Federal Communications Commission to provide personal wireless services throughout Orange County, Florida, including the Vista Lakes Area.

15.     T-Mobile requested APC construct a tower for T-Mobile in the area in and around 8849 Passaic Parkway, Orlando, FL 32829 (the "Vista Lakes Area") to solve a gap in their wireless service, consisting of a deficiency of in-building coverage and traffic capacity in the area.

16.    On September 23, 2019, APC applied for a conditional use approval ("Conditional Use") to allow a 130' tall communication tower ("APC's Tower") at 8849 Passaic Parkway (the "Church Site") in the Vista Lakes Planned Development ("Vista Lakes PD"). Attached hereto and incorporated by reference is Composite Exhibit 1, the City Appeal Petition Documents, including copy of Original Application and Modified Plans.

17.    APC Modified the Conditional Use in January 2020 so that APC's Tower is now 17' shorter and relocated on the Church Site to address separations under the LDC to the residential uses.  The City Council ultimately rejected the modification.  Therefore, APC maintains that only the first 113' of APC's Tower at its original location on the Church Parcel is before the Court for adjudication for the purposes of the effective prohibition claim.

18.    APC's Tower was intended to support T-Mobile's antennas at its top allowing T-Mobile to solve its service gap in the Vista Lakes Area, APC's tower was also provisioned to co-locate additional wireless carriers lower on the tower as the need arose.

19.    Staff reviewed the Conditional Use application and recommended approval of APC's Tower. Attached hereto and incorporated by reference is Exhibit 2 – Plaintiff's Post 10/29 Hearing Memorandum.

20.     APC's Tower was opposed by various residents in the Vista Lakes

PD. Attached hereto and incorporated by reference is Composite Exhibit 1, p. 51 –

290 – Transcripts of the 11/19/19 and 12/17/19 MPB hearings and Exhibit 3 –

Transcript of the 10/29/20 & 10/30/20 Hearing Officer Hearing.

21.     Defendant City of Orlando by and through the Municipal Planning

Board (the "MPB"), recommended denial of APC's Tower on 12/17/19 to the City

Commission.  Attached hereto and incorporated by reference is Composite Exhibit

1, p. 51 – 290 – Transcripts of the 11/19/19 and 12/17/19 MPB hearings.

22.     Plaintiff appealed the MPB's recommendation to the City Hearing

Officer process, outlined in the Code at sections 2.203 – 2.210.  This section of the

Code was amended in 2020 via Ordinance 2020-23, the appeal was governed by

the 2019 version of the Code.

23.     Defendant City of Orlando assigned hearing officer Frederick T.

Reeves to the appeal.  Officer Reeves reviewed pleadings, evidence, and took

sworn testimony on the APC Tower and the Conditional Use application.  Officer

Reeves issued an order, containing findings of fact and conclusions of law,

recommending approval of the shortened version of APC's Tower to the City

Commission on December January 13, 2021.  Attached hereto and incorporated by

reference is Exhibit 4 p. 1563 - 1612 – Hearing Officer's Recommended Order.

24.     Defendant City of Orlando by and through the City Council and City Commissioners voted to deny Plaintiff's Conditional Use application on 02/22/21. Attached hereto and incorporated by reference is Exhibit 5 – Minutes of the City Council's 02/22/21 Hearing.

25.     The City Council and City Commissioners reduced that vote to a written Decision on 02/22/21. Attached hereto and incorporated by reference is Exhibit 6 – City Commission's Final Order of Denial.

26.     The City's denial effectively prohibits T-Mobile from solving its service gap in Vista Lakes.  Therefore, the TCA requires the City to approve the Church Site as proposed in the Conditional Use application.

## Federal Law: Telecom Act Effective Prohibition

27.     The Telecom Act of 1996 (the "Telecom Act"), codified at 47 U.S.C. § 332 ("Section 332"), outlaws the prohibition or effective prohibition of personal wireless service, disallows a local jurisdiction from denying a request for a wireless communication tower when such prohibits or has the effect of prohibiting the provision or wireless service.

28.     Effective Prohibition analysis consists of two main prongs 1) showing a significant gap in service and 2) some inquiry into the feasibility of alternative facilities or site locations.

29.    Effective prohibition review asks not just whether a local jurisdiction's decision prohibited the provision of wireless coverage in an area but also whether the decision *had the effect* of prohibiting wireless coverage.

## COUNT I
## ORLANDO UNLAWFULLY PROHIBITED THE PROVISION OF PERSONAL WIRELESS SERVICES IN VIOLATION OF THE TCA, 47 U.S.C. §332(c)(7)(B)(i)(II).

30.    Plaintiff re-alleges, repeats, and incorporates by reference, as if fully set forth herein paragraphs 1-29.

31.    The TCA provides, in relevant part, that "[t]he regulation of the placement, construction, and modification of personal wireless service facilities by any State or local government or instrumentality thereof…shall not prohibit or have the effect of prohibiting the provision of personal wireless services." 47 U.S.C. §332(c)(7)(B)(i)(II).

32.    APC's Tower is a "personal wireless service facilit[y]" providing "personal wireless services" within the meaning of the TCA.

33.    A prohibition on the provision of personal wireless services occurs within the meaning of the TCA in the Middle District when there is a significant gap in a wireless carrier's service, the proposed Facility is the least intrusive means to fill that gap, and the local jurisdiction denies the proposed facility.

34.    The record shows that T-Mobile has a significant gap in service in Vista Lakes. Attached hereto and incorporated by reference are Composite Exhibit

7, T-Mobile RF Analyses for Alternates and Shorter Height and Exhibit 3, p. 1008

– 1064, Transcript of 10/29/20 and 10/30/20 hearing.

35.    The gap area:

a.  is primarily indoor and the deficiency in T-Mobile's coverage is

predominantly indoor, which reflects the type of observed cellular

use in the area;

b.  possesses a sizeable population, T-Mobile estimates it at

approximately 7300+, per the 2010 Census;

c.  contains a commercial shopping center and at least one heavily

traveled road, Lee Vista Blvd on which, T-Mobile states that, over

26,000 vehicles travel on a daily basis; and

d.  is physically large, .6 MI x 1.4 MI.

e.   There are no towers or tall structures for T-Mobile to collocate on,

f.  T-Mobile' towers currently servicing the gap area are lacking

adequate capacity to properly serve the gap area, and

g.  the capacity issue will continue to grow worse with time.

36.    The record demonstrates that neither the City, City Council, nor the

objecting residents put on any analysis or expert testimony countering T-Mobile's

RF need. Attached hereto and incorporated by reference is Exhibit 3, Transcript of

the 10/29/20 and 10/30/20 Hearing and Exhibit 8, Minutes of the City Council's

02/08/21 Hearing.

37.    The objecting residents did submit subjective opinion testimony of T-

Mobile's service in the Vista Lakes Area, but such testimony is insufficient to

counter T-Mobile's RF reports and expert testimony.  Attached hereto and

incorporated by reference is Composite Exhibit 9, T-Mobile RF engineer Resumes,

Composite Exhibit 7, T-Mobile RF Analyses for Alternates and Shorter Height,

Exhibit 3, Transcript of the 10/29/20 and 10/30/20 Hearing, and Composite Exhibit

1 p. 892 – 894, City Appeal Petition Documents, Original Application, and

Modified Plans.

38.    The record demonstrates that APC's Tower, as designed, is the least

intrusive design possible to address the gap in service:

  a.  APC's Tower, at 113' tall, is a compromise height, being shorter

      than the height T-Mobile originally directed APC to request under

      the Conditional Use.

  b.  The Design of APC's Tower employs camouflaging techniques,

      enclosing the antennas within a triangular shroud that allows space

      and airflow for the antennas while blocking their visibility.

      Further, the design routes all cabling for the antennas within the

tower itself.  Finally, APC's Tower would be completely dark at night.

39.     The record shows that APC and T-Mobile conducted a reasonable inquiry of alternates to both APC's Tower and the Church Site. Attached hereto and incorporated by reference is Composite Exhibit 10, Site Acquisition Agent's Resume and Documentation on Alternates, Composite Exhibit 7, T-Mobile RF Analyses for Alternates and Shorter Height, Exhibit 3 p. 1068 – 1128, Transcript of the 10/29/20 and 10/30/20 Hearing.

      a.  T-Mobile analyzed its own network and reviewed the area for towers and other structures of sufficient height to collocate its antennas and equipment upon.  T-Mobile also analyzed its current towers in the area to determine whether they could be reconfigured to solve the gap.  T-Mobile provided RF reports and testimony from Craig O'Neill, an RF engineer who was assigned to the project, confirming its findings that a new tower in the Vista Lakes Area is necessary.

      b.  T-Mobile issued a .25-mile radius search ring in, centered upon Amhurst Park at 6204 Chickasaw Trail, Orlando, FL 32829.  The center of the search ring is the most efficient location for APC's tower to be located when addressing T-Mobile's gap in service.

c.  APC analyzed 12 parcels prior to filing the conditional use, including the Church Site.  APC started at the search ring center and slowly moved east to the Church Site as it eliminated parcels as either unavailable, lacking adequate space for APC's Tower and its associated ground equipment area, or failing to meet the City's setback requirements.  APC provided a summary letter and sworn testimony from James McNicol, the site acquisition agent who led the search.

d.  APC and T-Mobile further analyzed 5 alternate sites at the request of neighboring property owners.  All were eliminated as either unavailable or unable to solve the gap in T-Mobile's service.

40.    The City's Code allows communication towers on PD/AN zoned parcels via conditional use review.  The Code further allows modification of setback requirements, also via conditional use review.  The record demonstrates that APC's Tower must be located in the Vista Lakes Area in order to fill the wireless service gap and to adequately address the service needs of the Gap Area.

41.    Plaintiff's modified application fulfills all of the criteria and requirements for approval of the project under the City's Zoning Code and/or Florida law.

42.     Injunctive relief to prevent effective prohibition id the proper remedy under the TCA.

43.     Defendants' unsupported and legally unsustainable denial of Plaintiff's Application has had and will have the continued effect of prohibiting T-Mobile from providing wireless services pursuant to its FCC license in violation of 47 U.S.C. § 332(c)(7)(B)(i)(II).

44.     Plaintiff has suffered and will continue to suffer irreparable injury as a result of Defendants' violation of the TCA.

**COUNT II**
**LACK OF SUBSTANTIAL EVIDENCE IN THE WRITTEN RECORD IN VIOLATION OF THE TCA, 47 U.S.C. §332(c)(7)(B)(iii).**

45.     Plaintiff re-alleges, repeats and incorporates by reference, as if fully set forth herein paragraphs1-29.

46.     Section 332(c)(7)(B)(iii) of the TCA provides that:

> Any decision by a State or local government or instrumentality thereof to deny a request to place, construct, or modify personal wireless service facilities shall be in writing and supported by substantial evidence contained in a written record.

47.     APC's Tower is a "personal wireless service facility" as defined in the TCA.

48.     Defendants have violated Section 332(c)(7)(B)(iii) of the TCA, because their denial of Plaintiff's Application is not based on substantial evidence and is, in fact, contrary to the evidence and the advice of the City Hearing Officer.

Attached hereto and incorporated by reference is Exhibit 4 – Hearing Officer's

Recommended Order and Opposition's Exceptions.

49.    APC has suffered and will continue to suffer irreparable injury as a

result of Defendants' violation of the TCA.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court issue an Order and Judgment:

a.    Declaring that Defendants' denial of Plaintiffs' Application prohibits or has the effect of prohibiting the provision of wireless service in violation of 47 U.S.C. §332(c)(7)(B)(i)(II);

b.    Declaring that Defendants' denial of Plaintiff's Application constitutes a violation of 47 U.S.C. §332(c)(7)(B)(iii) in that it is not supported by substantial evidence contained in the written record;

c.    Declaring that the Defendants' denial of Plaintiff's Application was affected by an error of law, was arbitrary and capricious and an abuse of discretion, and was not supported by substantial evidence based on the entire record;

d.    Ordering, directing, and enjoining the Defendants to immediately issue all approvals and permits necessary to allow construction and operation of the proposed APC's Tower, including (without limitation) all building permits, site plan approvals, special use permits, and variances;

e.    Awarding Plaintiff the costs, disbursements, and expenses of this action, including reasonable attorneys' fees; and such other and further relief as this Court deems just and proper.

s/ MATTANIAH S. JAHN, ESQ.
MATTANIAH S. JAHN, ESQ
Florida Bar No. 0105256
Mattaniah S. Jahn, P.A.
935 Main Street, Suite D1
Safety Harbor, FL 34695
Primary email: mjahn@thelawmpowered.com
Secondary email: vclark@thelawmpowered.com
Attorney for Plaintiff

s/ DAVID M. BLUM, ESQ.
DAVID M. BLUM, ESQ.
Florida Bar No. 0632759
Mattaniah S. Jahn, P.A.
935 Main Street, Suite D1
Safety Harbor, FL 34695
Primary email: dblum@thelawmpowerecd.com
Secondary email: david@davidblumlaw.com
Attorney for Plantiff